Grushko & Mittman, P.C.
Eliezer Drew, Esq. (ED0625)
Attorneys for Plaintiff
515 Rockaway Avenue
Valley Stream, New York 11581
(212) 697-9500

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SHRAGA LEVIN<br><br>Plaintiff,<br><br>-against-<br><br>IMAGINING DIAGNOSTIC SYSTEMS, INC.,<br><br>Defendant. | Index No. 11 Civ. ____ (__)<br><br>**COMPLAINT** |

Plaintiff, Shraga Levin, by his attorneys, for his Complaint herein, respectfully alleges:

### THE PARTIES

1. Plaintiff Shraga Levin ("Mr. Levin" or "Plaintiff"), is an individual, domiciled in New York with an address of 420 Crown Street, Brooklyn, NY 11225.

2. Upon information and belief, Imaging Diagnostic System, Inc. ("Imaging Diagnostic" or "Defendant") is a Florida corporation with its principal place of business in Fort Lauderdale, Florida.

### JURISDICTION AND VENUE

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332(a)(1) in that the action is between citizens of different states and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

1

4.	Venue is proper in this District pursuant to 28 U.S.C. §1391(a), in that it is the exclusive district in which the parties agreed that the claims hereafter set forth can be brought.

## FACTS COMMON TO ALL CLAIMS

5.	On or about August 1, 2008, Imaging Diagnostic issued to Plaintiff a warrant to purchase 1,866,666 shares of Imaging Diagnostic's common stock (the "Warrant").

6.	The initial purchase price per share of common stock upon exercise ("Exercise Prise") of the Warrant was $0.0228 per share. Upon receipt of a Notice of Exercise, and payment for the shares being purchased Imaging Diagnostic was required to deliver the shares to the holder within three Trading Days (as defined in the Warrant).

7.	In order to induce Plaintiff to accept the Warrant, Imaging Diagnostic agreed to reduce the Exercise Price and increase the total amount of shares purchasable under the Warrant if Imaging Diagnostic offered or sold any stock at a price lower than the Exercise Price in effect at the time of such other issuance. Thus §3(b) of the Warrant provides:

> "b)	Subsequent Equity Sales. If the Company or any Subsidiary thereof, as applicable, at any time while this Warrant is outstanding, shall sell or grant any option to purchase, or sell or grant any right to reprice, or otherwise dispose of or issue (or announce any offer, sale, grant or any option to purchase or other disposition) any Common Stock or Common Stock Equivalents entitling any Person to acquire shares of Common Stock, at an effective price per share less than the then Exercise Price (such lower price, the "Base Share Price" and such issuances collectively, a "Dilutive Issuance") (if the holder of the Common Stock or Common Stock Equivalents so issued shall at any time, whether by

2

operation of purchase price adjustments, reset provisions, floating conversion, exercise or exchange prices or otherwise, or due to warrants, options or rights per share which are issued in connection with such issuance, be entitled to receive shares of Common Stock at an effective price per share which is less than the Exercise Price, such issuance shall be deemed to have occurred for less than the Exercise Price on such date of the Dilutive Issuance), then, the Exercise Price shall be reduced and only reduced to equal the Base Share Price and the number of Warrant Shares issuable hereunder shall be increased such that the aggregate Exercise Price payable hereunder, after taking into account the decrease in the Exercise Price, shall be equal to the aggregate Exercise Price prior to such adjustment. Such adjustment shall be made whenever such Common Stock or Common Stock Equivalents are issued. Notwithstanding the foregoing, no adjustments shall be made, paid or issued under this Section 3(b) in respect of an Exempt Issuance. The Company shall notify the Holder, in writing, no later than the Trading Day following the issuance of any Common Stock or Common Stock Equivalents subject to this Section 3(b), indicating therein the applicable issuance price, or applicable reset price, exchange price, conversion price and other pricing terms (such notice, the "Dilutive Issuance Notice"). For purposes of clarification, whether or not the Company provides a Dilutive Issuance Notice pursuant to this Section 3(b), upon the occurrence of any Dilutive Issuance, after the date of such Dilutive Issuance the Holder is entitled to receive a number of Warrant Shares

based upon the Base Share Price regardless of whether the Holder accurately refers to the Base Share Price in the Notice of Exercise."

8. On December 10, 2008, and December 31, 2008, Imaging Diagnostic reduced in the exercise price of certain warrants issued to third parties to an exercise price of $0.005 per share. This issuance was a Dilutive Issuance as set forth in §3(b) of the Warrant.

9. As a result of the Dilutive Issuance the Exercise Price of the Warrant was reduced to $0.005 and the total number of shares acquirable under the Warrant increased to 8,511,997, per the following calculations:

    a. The Warrant was originally exercisable for 1,866,666 shares at an Exercise Price of $.0228 for an aggregate exercise price of $42,559.98.

    b. By dividing the aggregate exercise price of $42,599.98 by the reduced Exercise Price of $0.005 the resulting quotient of 8,511,997 is the amount of shares exercisable under the Warrant

10. On October 16, 2009, Plaintiff submitted a Notice of Exercise to cashlessly[1] exercise its rights to purchase 1,866,666 shares of Defendant's common stock for a net acquisition of 1,392,891 shares.

---

[1] In a cashless exercise the holder of the warrant tenders an amount of shares with a value equal to the aggregate exercise price of the shares being purchased. Here is an example how a cashless exercise works. Assume the holder has a warrant exercisable for 10,000 shares at an exercise price of $1.00 per share and the current value of the shares is $10 per share. In a regular exercise of the entire warrant, the holder would pay $10,000 and receive 10,000 shares valued at $100,000. In a cashless exercise the holder would surrender the warrant in exchange for 9,000

11. Imaging Diagnostic acknowledged the reduced Exercise Price and issued to Mr. Levin 1,392,891 shares of its common stock.

12. In fact, the Defendant's counsel, Robert B. Macaulay, Esq. of Carlton Fields, provided an opinion of counsel dated October 20, 2009, allowing for the shares to be issued without any restrictive legend in which he states:

> "The Warrant's exercise price was automatically amended to December 10, 2008, and December 31, 2008, as a result of reductions in the exercise price of related third-party warrants."

13. On, December 28, 2010, Plaintiff submitted another Notice of Exercise to cashlessly exercise its rights to purchase the 6,645,331 shares of Defendant's common stock, the balance of the shares purchasable under the Warrant as a result of the Dilutive Issuance, for a net acquisition of 5,814,665 shares (the "December Notice of Exercise").

14. Pursuant to the terms of the Warrant, Defendant was required to deliver the 5,814,665 shares within three Trading Days.

15. Defendant, through its counsel Robert B. Macaulay, Esq. of Carlton Fields, has stated that it will not honor the December Notice of Exercise because Macaulay is taking the position that the Warrant doesn't contain Section 3(b) so no Dilutive Issuance has occurred – directly contradicting his previous statement.

### FIRST CLAIM FOR RELIEF
(Breach of Contract, Relief Sought - Permanent Injunctions)

16. Plaintiff re-alleges paragraphs 1 through 15.

---

shares and the other 1,000 shares that are worth $10,000 would be cancelled as payment of the Exercise Price of the warrant.

17. As a result of Defendant's failure to honor the December Notice of Exercise, Highline has breached the terms of the Warrant.

18. As a result of Defendant's breach of the Warrant, Plaintiff has been damaged.

19. Pursuant to Section 4(j) of the Warrant, Defendant acknowledges that Plaintiff has no adequate remedy at law.

20. Plaintiff, therefore, is entitled to a permanent injunctive relief to remedy Defendant's breach of contract and require Defendant to issue the shares pursuant to the December Notice of Exercise.

## SECOND CLAIM FOR RELIEF
(Breach of Contract, Relief Sought - Damages)

21. Plaintiff re-alleges paragraphs 1 through 20.

22. As a result thereof, Plaintiff is entitled to recover damages, including, but not limited to liquidated damages pursuant to §2(e)(i) of the Warrant and a decline in the value of the shares issuable pursuant to the December Notice of Exercise, in such amounts as may be determined at trial.

## THIRD CLAIM FOR RELIEF
(Conversion, Relief Sought - Preliminary and Permanent Injunctions)

23. Plaintiff re-alleges paragraphs 1 through 22.

24. As a result of Plaintiff's submission of the December Notice of Exercise on December 28, 2010, Plaintiff is entitled to possession of 5,814,665 shares of Defendant's common stock. Plaintiff's right to possession of such shares is superior to any right of possession of such shares on the part of Defendant.

25. As a result of Defendant's failure to deliver the 5,814,665 shares of stock to which Plaintiff is entitled pursuant to the duly submitted Notice of Exercise, Defendant has converted those shares.

26. As a result of Defendant's conversion of the shares, Plaintiff has been damaged.

27. Plaintiff has no adequate remedy at law.

28. Plaintiff is, therefore, entitled to permanent injunctive relief to remedy such conversion.

## FOURTH CLAIM FOR RELIEF
(Conversion, Relief Sought - Damages)

29. Plaintiff re-alleges paragraphs 1 through 28.

30. As a result thereof, Plaintiff is entitled to damages in an amount to be determined at trial.

## FIFTH CLAIM FOR RELIEF
(Attorney's Fees)

31. Plaintiff re-allege paragraphs 1 through 30.

32. In accordance with §5(g) of the Warrant, the Plaintiff is entitled to an award of reasonable attorney's fees, in an amount to be determined at trial.

Wherefore Plaintiff demands judgment against Defendant Imaging Diagnostic System, Inc. as follows:

a. On the First Claim for Relief, for an order, permanently directing Defendant to immediately deliver 5,814,665 shares of its common stock to Plaintiff; and

b. On the Second Claim for Relief for damages as may be determined at trial;

c.  and On the Third claim for Relief for permanent injunctive relief directing Defendant to immediately deliver 5,814,665 shares of its common stock to Plaintiff; and

d.  On the Fourth Claim for Relief for damages in the amount to be determined at trial; and

e.  On the Fifth Claim for Relief for reasonable attorneys' fees in an amount to be determined at trial; and

f.  On all claims for relief, interest, attorneys' fees, the costs and disbursements of this action and such other, further and different relief as the court deems just and proper.

Dated: Valley Stream, New York
       March 1, 2011

GRUSHKO & MITTMAN, P.C.

By: _____
Eliezer Drew, Esq. (ED0625)
Attorneys for Plaintiff
515 Rockaway Avenue
Valley Stream, New York 11581
(212) 697–9500

UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF NEW YORK
Index No.: 11 Civ. _____ (___)

------------------------------------------------------------

SHRAGA LEVIN

                                                 Plaintiff,

                     - against -

IMAGINING DIAGNOSTIC SYSTEMS, INC.,

                                               Defendant.

------------------------------------------------------------

# **COMPLAINT**

*Grushko & Mittman, P.C.*
*Attorneys for Plaintiff*
*551 Fifth Avenue, Suite 1601*
*New York, New York 10176*
*(212) 697–9500*